## In re COLORADO & S. R. CO.
### No. 11842.

United States District Court
D. Colorado.
May 2, 1949.

J. C. James and Walter McFarland, both of Chicago, Ill., and John L. Rice, of Denver, Colo., for petitioner.

Max M. Bulkeley, United States Attorney, of Wray, Colo., Henry Lutz, Assistant United States Attorney of Denver, Colo., and Frederic Rita, Special Assistant to the Attorney General, for the United States.

Before PHILLIPS, Circuit Judge, and KENNEDY and SYMES, District Judges.

PER CURIAM.

### Findings of Fact.

1. The original petition was filed November 9, 1942, in the District Court of the United States, for the District of Colorado, by the Petitioner, The Colorado and Southern Railway Company, for approval and confirmation of a Plan of Adjustment, filed therewith, under the Act of Congress approved October 16, 1942, 56 Stat. 787, commonly called and hereinafter referred to as the McLaughlin Act, which then constituted Chapter XV of the Act of July 1, 1898, entitled "An Act to establish a uniform system of bankruptcy throughout the United States," as amended.

2. On the same day said original petition was filed, November 9, 1942, the Clerk of this Court duly transmitted to the Secretary of the Treasury of the United States a copy of said original Petition to which said Plan of Adjustment was attached, pursuant to the requirement of Section 736 of the McLaughlin Act, 56 Stat. 794; which Petition and Plan were received by the Secretary of the Treasury on November 13, 1942. On November 25, 1942, the Clerk of this Court duly notified the Secretary of the Treasury of the United States that a hearing would be held on December 15, 1942, for the purpose of considering said Petition and determining the date for hearing thereon; which notice was received by said Secretary of the Treasury on November 28, 1942. On December 15, 1942, the Clerk of this Court duly transmitted to the Secretary of the Treasury of the United States copy of Order No. 1 herein, together with the notice of hearing annexed thereto, which said Order and notice were duly received by the Secretary of the Treasury on December 29, 1942. On January 26, 1943, the Clerk of this Court duly transmitted to the Secretary of the Treasury of the United States copy of Order No. 2, dated January 25, 1943, postponing said hearing on said Petition and Plan from February 23, 1943, to March 3, 1943, which was duly received by said Secretary of the Treasury.

3. Said Secretary of the Treasury referred said original Petition to the Commissioner of Internal Revenue of the United States on December 1, 1942; and said Secretary referred said notice of hearing to said Commissioner on December 30, 1942.

4. At all times concerned in this proceeding the matter of preparing, making, and filing the income tax and excess profits tax returns of The Colorado and Southern Railway Company, and of its affiliated and subsidiary companies, was attended to by the General Auditor of said Railway Company, Mr. Ralph C. Smith.

5. The Colorado and Southern Railway Company for itself and its affiliated and subsidiary companies, filed consolidated Federal income tax and excess profits tax returns for the year 1940, in the office of the Collector of Internal Revenue at Denver, Colorado, on March 14, 1941; in which said 1940 returns said Railway Company set forth:

"(a) that the part of equity invested capital consisting of property paid in for stock amounted to $48,001,764.00, of which $48,000,000.00 was the value of the property paid in for stock of The Colorado and Southern Railway Company, being the amount at which said stock had been carried on the books of account and balance sheets

of said Railway Company at all times since its organization in 1898;

"(b) that the part of equity invested capital, consisting of accumulated earnings and profits, then amounted to $20,369,-868.72;

"(c) that said companies had a net operating loss of $1,747,037.04 in and for the year 1940, which could be carried over as a net operating loss deduction in computing taxable income for the years of 1941 and 1942;

"(d) that said companies had an unused excess profits credit for the year 1940 of $7,728,055.26, of which $6,812,048.36 could be carried over and deducted in computing adjusted excess profits net income for the years 1941 and 1942; and

"(e) that no income taxes or excess profits taxes were owing from said companies for the year 1940."

At all times after the filing of said tax returns for 1940, the United States had full notice and knowledge of everything therein contained.

6. The Railway Company, for itself and its affiliated and subsidiary companies, filed consolidated Federal income tax and excess profits tax returns for the year 1941 in the office of said Collector on March 16, 1942; in which said 1941 returns said Railway Company set forth:

"(a) that the part of equity invested capital consisting of property paid in for stock of The Colorado and Southern Railway Company amounted to said sum of $48,000,000.00;

"(b) that the part of equity invested capital, consisting of accumulated earnings and profits, then amounted to $18,707,-695.45;

"(c) that said companies had a net operating loss of $836,540.29 in and for the year 1941, which could be carried over as a net operating loss deduction in computing taxable income for the years of 1942 and 1943;

"(d) that said companies had unused excess profits credits of $13,173,798.32 in 1941, consisting of $6,812,048.36 carried over from 1940 and $6,361,749.96 unused excess profits credits for 1941, which could be car-ried over and deducted in computing adjusted excess profits net income for the year 1942 and, in part, for the year 1943;

"(e) that no income taxes or excess profits taxes were owing from said companies for the year 1941."

At all times after the filing of said tax returns for 1941, the United States had full notice and knowledge of everything therein contained.

7. Some six weeks before the hearing was had on said original Petition and Plan of Adjustment, and as a result of said process and notice served on the Secretary of the Treasury, the United States made an investigation at the office of the General Auditor of said Railway Company at Denver, Colorado, with respect to Federal taxes; and in the course of said investigation the United States was informed by said General Auditor that said Railway Company would file on or before March 15, 1943 amended income tax and excess profits tax returns for the years 1940 and 1941, which would increase the carry-over credits for and from those years to the year 1942 and, in part to 1943, and that said amended carry-over credits and deductions would be used in said Railway Company's tax returns for the year 1942, and said General Auditor exhibited to the United States the work sheets with respect to said amended returns.

"8. On March 12, 1943, said Railway Company, for itself and its affiliated and subsidiary companies, filed said amended income tax returns in the office of said Collector of Internal Revenue for the years 1940 and 1941, whereby said net operating loss for 1940 was increased to the sum of $2,045,673.94 of which $2,033,824.48 could be carried over as a net operating loss deduction in 1942 and 1943; and said net operating loss for 1941 was increased to the sum of $1,637,602.60 of which $1,605,-727.25 could be carried over as a net operating loss deduction in 1942 and 1943. The underlying data supporting said amendments appeared in the books and records of said Company for the years 1940, 1941 and 1942, and were available to the United States at all times after January 25, 1943.

"9. On or about March 1, 1943, said Railway Company, for itself and its affiliated and subsidiary companies, prepared con-

solidated income tax and excess profits tax returns for the year 1942; which said income tax return included and applied said amended carry-over net operating loss deductions from the years 1940 and 1941, and which said excess profits tax return included and applied unused excess profits credits from the years 1940 and 1941. Said 1942 returns showed:

"(a) that the part of equity invested capital consisting of property paid in for stock of The Colorado and Southern Railway Company amounted to said sum of $48,000,-000.00;

"(b) that the part of equity invested capital, consisting of accumulated earnings and profits, then amounted to $17,954,799.25;

"(c) that after applying and deducting the carry-over net operating loss deductions and the unused excess profits credits from the years 1940 and 1941, there were no income taxes or excess profits taxes owing to the United States for the year 1942; and

"(d) that said companies had an unused excess profits credit of $16,399,172.87 for the year 1942, of which $9,582,124.51 could be carried over and deducted in computing excess profits net income for the year 1943, and, in part, for the year 1944."

In compiling said returns for the year 1942 said Railway Company used and applied the same uniform method and practices of computing and deducting from gross income the depreciation on locomotives, cars and rolling stock equipment, and the retirements of road property and structures, as it had used and applied in said amended tax returns for the years 1940 and 1941. Said 1942 income tax and excess profits tax returns were open to the inspection and examination of the United States at all times after the preparation of the same as aforesaid, and were duly filed in the office of said Collector March 15, 1943.

10. The Colorado and Southern Railway Company and its said affiliated and subsidiary companies are railroad companies engaged in interstate commerce; and in preparing said consolidated tax returns for the years 1940 and 1941 said Railway Company, as it had done for many years, employed and applied uniform principles and practices, prescribed by the Interstate Commerce Commission for said Railway Company, with respect to depreciation of locomotives, cars and rolling stock, and with respect to retirements of road property and structures, in arriving at deductions to be made from gross income on account of such depreciation and retirements.

11. Prior to January 1, 1943, all the business, events, facts and matters, which created the liability, if any, of The Colorado and Southern Railway Company and of its affiliated and subsidiary companies for Federal income taxes and excess profits taxes for the year 1942 had been transacted and had happened and occurred; and all such taxes became knowable and ascertainable on January 1, 1943; and at all times after December 31, 1942 the United States was a creditor of said Railway Company and its affiliated and subsidiary companies for any Federal income tax and excess profits tax liability for the year 1942.

12. Customary reports made by said Railway Company to the Interstate Commerce Commission in accordance with the rules and requirements of said Commission, and which were placed on file with said Commission in the month of January, 1943, and which were public records, disclosed that the income of said Railway Company in the year 1942 was substantially more than in the year 1941.

13. All the data, information and facts necessary to be known for the computation, ascertainment, determination and statement of the income taxes and excess profits taxes of said Railway Company and its affiliated and subsidiary companies for the year 1942, as upon a consolidated return, including said amendments with respect to net operating loss deductions and excess profits credits carried over from the years 1940 and 1941, were of record and ascertainable in the office of said General Auditor of said Railway Company, at Denver, Colorado, at all times after January 25, 1943; and were there subject to inspection and examination by the United States at all times after January 25, 1943.

14. On August 13, 1943, an amended consolidated income tax return for the year 1942 was filed by the Railway Company and its affiliated and subsidiary companies, reducing the net operating loss from $904,-

902.24 as shown in the consolidated return, filed March 15, 1943, to $496,079.55 of which $496,064.25 could be carried over and used as a net operating loss deduction in 1943. Said amended return shows that the Plan of Adjustment approved by this Court March 8, 1943 and made effective retroactively to November 1, 1941, necessitated reductions of interest accruals on the General Mortgage Bonds of the Railway Company from 4½% to 4% from November 1, 1941, and elimination of accruals of interest on said bonds held by Fort Worth and Denver City Railway Company and pledged with Reconstruction Finance Corporation; which items with other corrections resulting from the Plan totalled $150,891.11. Said amended return also made correction of a deduction of $286,017.00 erroneously taken in the 1942 return. Said amendments, with some minor corrections, made a total reduction of $408,822.69 in the net operating loss as originally claimed in the 1942 return. This amended return had no effect on income taxes payable for the year 1942, but reduced the net operating loss deductions carried over into 1943 and thereby increased the income tax payable by the Railway Company and its subsidiaries from $3,092,764.92 to $3,264,470.45; which increased income tax for 1943 was duly paid. Such reduction in net operating loss together with changes contained in said amended returns filed March 12, 1943, resulted in amendment of the unused excess profits credit subject to carry-over from 1940 to 1941 and 1942 to $6,833,723.67, and of the unused excess profits credit subject to carry-over from 1941 to 1942 and 1943 to $6,737,828.82, and of the 1942 excess profits credit to $5,768,-505.48 of which $2,884,432.92 was subject to carry-over to 1943 and 1944, making $9,-622,261.74 the unused excess profits credit which could be carried to 1943, and in part to 1944, from 1941 and 1942.

15(a). The United States made no appearance in the original proceeding, either before, at or after the hearing on said original Petition and the Plan of Adjustment proposed thereby, and never filed or presented any claim for taxes or otherwise in said proceeding; and never made or presented therein any objection to the proposed Plan of Adjustment, nor to any of said tax returns, nor to any valuation, fact, state-ment, figure, claim, amendment, or other matter contained or set forth in any of said tax returns, or to any method, practice or rate employed in the preparation or computation of said returns; nor to any proposed amendment to any of said returns; nor to the contents or manner of keeping of any of said Railway Company's accounts, books, or records; and in said proceeding the United States never proposed, nor requested the Court to make any provision for taxes in said Plan of Adjustment, or other modification thereof, nor applied to the Court for additional time to prepare and file a claim for taxes.

15(b). In any event it was the duty of the Secretary of the Treasury by virtue of 26 U.S.C.A. § 274 to file a claim for or on account of taxes for the years 1940, 1941 and 1942, if any the United States had, immediately after March 15, 1943. It not only failed so to do, but failed to apply to the Court for additional time in which so to do.

16. A hearing was duly held in said District Court at Denver, Colorado, on March 3 and March 4, 1943, on said original Petition and the Plan of Adjustment proposed thereby, before a Special Court composed of the same three Judges who have heard said Supplemental Petition; and although objections were made to said Plan of Adjustment and modifications thereof were requested by other parties at said hearing, the United States made no appearance at said hearing and took no part therein.

17. On March 8, 1943, said Special Court made and entered Findings of Fact, Conclusions of Law and a Decree in said proceeding, and thereby approved, confirmed and established said Plan of Adjustment in the form proposed in and by said original petition. At all times since, said Decree has been, and still is, in full force and effect. In and by said Decree the Court reserved full right and jurisdiction to make, from time to time, such further orders as may be necessary to protect the rights and duties of all parties under said Plan of Adjustment, and the orders of the Special Court herein pursuant to Section 746 of said Mc-Laughlin Act, 56 Stat. 795.

18. Among other things, said Plan of Adjustment extended the dates of maturity of certain obligations of said Railway Company and some of its subsidiary com-

panies; reduced the rate of interest on all mortgage bonds of said Railway Company; made parts of said interest payable only if earned in each year; deprived all stockholders of their rights to dividends; restricted the amount of earnings that could be used for capital expenditures; and provided for the application of all remaining income, available therefor under the Plan, to the reduction of said Railway Company's debt, which then amounted to about $45,000,000.-00. Among the purposes of said Plan of Adjustment, in providing for the reduction of said debt, were the reduction of interest, the increase of value of the bonds and stocks of said Railway Company, and the improvement of its credit, so that the debts of said Railway Company could be refinanced upon the expiration of said Plan in 1954.

19. By virtue of said Decree said Plan of Adjustment went into effect retroactively on November 1, 1941. At all times since that date the same has been, and still is, in force and effect; and under the provisions thereof and of said Decree, said Plan of Adjustment is to remain and continue in force and effect until November 1, 1954, if said Railway Company remains solvent and performs its obligations under the Plan.

20. It appeared at the hearing on March 3 and 4, 1943, that no taxes were due or owing to the United States from said Railway Company; accordingly the Court then made a finding to that effect.

21. No showing was made at the hearing on March 3 and 4, 1943, that any change thereafter would be made, or be contended for, by the United States in respect to any of the bases, facts, statements, valuations, data, principles, methods, practices or other matter set forth or used in any tax returns of said Railway Company or its affiliated or subsidiary companies, or in any of the books or accounts of any of said companies, which would affect the computation or amount of income taxes or excess profits or other taxes of said companies, prior to or during the life of said Plan of Adjustment.

22. The Court found and concluded, and acted upon the premise and ground, that with respect to federal taxes, said Plan would be administered, carried out and executed on the same bases, valuations, data, facts, principles, practices, manner, and method, which said Railway Company and its affiliated companies had theretofore returned, reported, employed, applied and used in their books and in their tax returns, with respect to income taxes and excess profits taxes; that in the execution of said Plan, said Railway Company would have the benefit of all net operating losses, excess profits credits, deductions, and carry-overs, which had accumulated on its books and in its tax returns during the depression years, in computing its income taxes and excess profits taxes on the larger future income then expected from war traffic; and, that no changes would be made in any of said tax bases, valuations, data, facts, principles, practices, manner, methods, or tax returns, that would decrease any net operating losses, excess profits credits, deductions, or carry-overs, resulting therefrom, or otherwise change the bases for the computation of federal taxes, which were relied upon in estimating future earnings available for debt reduction under the Plan.

23. The United States never filed any motion nor made application under Rule 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or otherwise, for any relief from said Decree, or for any modification of said Decree or of the Plan of Adjustment approved and confirmed thereby, with respect to taxes or otherwise.

24. On or about March 15, 1944, said Railway Company, on behalf of itself and its affiliated and subsidiary companies, filed in the office of said Collector consolidated income tax and excess profits tax returns for the year 1943; in which said 1943 returns said Railway Company set forth:

"(a) that the part of its equity invested capital consisting of property paid in for stock of The Colorado and Southern Railway Company amounted to said $48,000,-000.00;

"(b) that the part of its equity invested capital consisting of accumulated earnings and profits, then amounted to $19,208,573.-94, that being the amount thereof shown by the books of said companies on December 31, 1942;

"(c) that said companies owed to the United States an income tax for the year 1943 of $3,264,470.45;

"(d) that after applying and deducting the carry-over unused excess profits credits from the years 1941 and 1942, there was no excess profits tax due the United States for the year 1943; and

"(e) that said companies had an excess profits credit of $5,700,902.08 for the year 1943, and an unused excess profits credit of $5,365,052.14 for the year 1943 of which $2,884,432.92 could be carried over and deducted in computing excess profits net income for the year 1944."

25. During the years 1943, 1944, 1945 and 1946, and prior to the service on said Railway Company of the Revenue Agent's Report hereinafter referred to, and in reliance on said Decree and Plan of Adjustment, and on the propriety, correctness and integrity of its said income and excess profits tax returns, and the bases, valuations, facts, data, statements, principles, methods, practices and computations therein set forth and employed, and on all the said carry-over credits and deductions shown thereby, and acting in pursuance of said Decree and Plan of Adjustment, and with the approval of the Court, said Railway Company used and applied substantially all of its net income and funds, remaining after payment of taxes and after payment of the interest required and the small capital expenditures authorized by said Plan, to and for the reduction of its said indebtedness to Reconstruction Finance Corporation. From the effective date of the Plan of Adjustment, October 31, 1941, to the date said Revenue Agent's Report was served upon said Railway Company, September 17, 1946, said Railway Company and its subsidiaries paid approximately $11,000,000 to Reconstruction Finance Corporation in discharge of debt at full face amount thereof, and paid $4,268,000 in purchase of General Mortgage Bonds of said Railway Company at an average price of forty cents on the dollar.

26. Since the effective date of said Plan of Adjustment said Railway Company and its subsidiaries have paid interest on indebtedness, in the sum of $8,166,672 to Reconstruction Finance Corporation, and in the sum of $3,212,125 to the holders of said General Mortgage Bonds.

27. Since the effective date of said Plan of Adjustment said Railway Company and its affiliated and subsidiary companies have paid Federal taxes to the United States in the sum of $11,891,734, which is $1,500,000 more than would have been paid if the Plan had not been in operation.

28. On September 17, 1946, the United States served on and delivered to said Railway Company a Revenue Agent's Report, dated November 26, 1945, which undertook to change the consolidated income tax and excess profits tax returns of said Railway Company and its affiliated and subsidiary Companies for the years 1940, 1941, 1942 and 1943; and among other things undertook

"(a) to reduce the part of said Railway Companies' equity invested capital consisting of property paid in for stock from said sum of $48,001,764.00 to $11,786,186.94 for each of said years;

"(b) to reduce the part of said Railway Companies' equity invested capital consisting of accumulated earnings and profits from $20,369,868.72 to $14,330,375.46 for the year 1940, from $18,707,695.45 to $13,050,380.12 for the year 1941, from $17,954,799.25 to $12,738,237.64 for the year 1942, and from $19,208,573.94 to $11,301,502.79, for the year 1943;

"(c) to modify the bases, methods and practices theretofore followed in the computation of depreciation on equipment such as locomotives, cars and rolling stock, and to change the income tax return for 1940 reducing depreciation on equipment $320,529; change the income tax return for 1941, reducing depreciation on equipment $312,157; change the income tax return for 1942, reducing depreciation on equipment $285,685; change the income tax return for 1943, reducing depreciation on equipment $271,857—thereby making $1,190,228 reductions in depreciation on equipment for said four years; to reduce carry-overs from 1940 and 1941 which, with the reductions in 1942, increased taxable income in 1942 by $918,371, the tax effect of which was $385,716 additional income tax for 1942; and to reduce depreciation on equip-

ment for the year 1943, resulting in excess profits tax of $244,671 for that year;

"(d) to modify the bases, methods, and practices theretofore followed in the computation of retirements of road property and structures and to change the income tax return for the year 1940 by reducing such retirement loss deductions by $313.234; to change the income tax return for 1941 by reducing retirement loss deductions by $845,713; to change the income tax return for 1942 by reducing retirement loss deductions by $701,350; to change the income tax return for 1943 by reducing retirement loss deductions by $136,213—thereby making $1,996,510 reductions on retirement loss deductions for said four years; to reduce carry-overs from 1940 and 1941 which, with the reductions in 1942, increased income taxes $781,325 for the year 1942; and to increase excess profits taxes for the year 1943 by $122,592; and

"(e) to reduce the excess profits credit from $6,833,723.67 to $3,856,476.35 for the year 1940, from $6,737,828.82 to $3,787,644.70 for the year 1941; from $5,768,505.48 to $3,263,192.83 for the year 1942 and from $5,700,902.08 to $2,990,502.02 for the year 1943."

The Revenue Agent's changes in said income tax and excess profits tax returns for the years 1940, 1941, 1942 and 1943, resulted in proposed additional income and excess profits taxes aggregating $3,001,061.73 for the years 1942 and 1943. At the time of the service of said Revenue Agent's report, the United States demanded that the Railway Company pay for itself and its affiliated and subsidiary companies the amount of said proposed taxes for 1942 and 1943, or that it should protest the proposed amount.

29. If interest is allowable on said proposed assessments the amount of such interest computed to January 1, 1949, would be $960,818.00.

30. Said Railway Company did not agree to said proposed assessments, and filed and presented a protest against the same; but was unable to accomplish the withdrawal thereof by the United States, or to bring about a satisfactory settlement.

31. The United States never made, nor filed in said proceeding either before or after the making of said Decree of March 8, 1943, any assessment of any of the claimed taxes proposed in said Revenue Agent's Report, either under Section 738 of said McLaughlin Act, 56 Stat. 794, or under Section 274 of the Internal Revenue Code.

32. Unless appropriate relief is granted herein, the United States will enforce payment of the said taxes proposed in said Revenue Agent's Report.

33. If the United States had filed and established a claim for said proposed taxes for the year 1942 in said proceeding before said Decree was made and entered, or thereafter in accordance with said Rule 60, or if the United States had informed the Court and parties in interest before the making and entry of said Decree of its intention to make the changes in said tax returns, and in said tax bases, valuations, facts, data, methods, principles and practices proposed in said Revenue Agent's Report, and if it had established a right so to do, any modification of said Plan of Adjustment to provide for such taxes for 1942 and subsequent years, would have substantially and adversely affected the interests of all classes of creditors, and would have been unacceptable to large numbers of the holders of bonds and stock of said Railway Company, resulting in withdrawal of their assents to the Plan and in lack of numbers of assents requisite for the Court to approve or confirm such modified Plan.

34. If the United States had filed and established a claim for said proposed taxes for the year 1942 in said proceeding before said Decree was made and entered, or thereafter in accordance with said Rule 60, or if the United States had informed the Court and parties in interest before the making and entry of said Decree of its intention to make the changes in said tax returns, and in said tax bases, valuations, facts, data, methods, principles and practices proposed in said Revenue Agent's Report, and if it had established a right so to do, any modification of said Plan of Adjustment to provide for such taxes for 1942 and subsequent years would have prevented the Court from making the follow-

ing findings, required by said McLaughlin Act as conditions precedent to the approval and confirmation of a Plan of Adjustment, to-wit:

"32. Upon and after due consideration of the probable prospective earnings of the property of the Petitioner, in the light of its earnings experience and of such changes as may reasonably be expected, said Plan—

"(i) is in the public interest and in the best interests of each class of creditors and stockholders;

"(ii) is feasible, financially advisable, and not likely to be followed by the insolvency of Petitioner, or by need of financial reorganization or adjustment;

"(iii) does not provide for fixed charges of whatsoever nature, including fixed charges on debt, amortization of discount on debt, and rent for leased roads, in an amount in excess of what will be adequately covered by the probable earnings available for the payment thereof;

"(iv) leaves adequate means for such future financing as may be requisite;

"(v) is consistent with adequate maintenance of said property;

"(vi) is consistent with the proper performance by the Petitioner of service to the public as a common carrier, and will not impair its ability to perform such service.

"33. The Petitioner is not in need of financial reorganization of the character provided for under Section 77 of the Bankruptcy Act [11 U.S.C.A. § 205].

"34. The Petitioner's inability to meet its debts matured or about to mature is reasonably expected to be temporary only."

35. The income accounts of the Railway Company and its subsidiary and affiliated companies attached to the Plan of Adjustment as Appendix IV, pages 58–60, stated the amount of equipment depreciation each year from 1932 to 1942 inclusive. These figures were before this Court and were before the Secretary of the Treasury with the Petition and notice of hearing. Also, they were a constituent part of the income tax returns of said companies for 1940 and 1941 and prior years. Depreciation on equipment, as thus stated in the accounts of the Railway Companies,

was an important factor in the Plan of Adjustment and was relied upon to supplement the limited Capital Fund fixed by the Plan. If the reductions in such depreciation on equipment as proposed in the Revenue Agent's report had been established at the hearing on the Plan, the Court would have been required to make extensive modification in the Plan. The balance sheets of the Railway Companies attached to the Plan as Appendix III, pages 55–57, stated the value of the Capital Stock of The Colorado and Southern Railway Company at $48,000,000 and stated the accumulated earnings and profits of the Railway Companies as $16,200,363 as of the date of said balance sheets. These figures were before the Secretary of the Treasury with the Petition and notice of hearing. They constituted important facts in determining the interests of the stockholders of the Railway Company and whether or not the Plan was fair and equitable as an adjustment and conformed to the law of the land. If the reductions in these items proposed in the Revenue Agent's Report had been established at the time of the hearing on the Plan, the Court would have been required to make drastic alterations in the Plan.

36. Payment of the taxes proposed by said Revenue Agent's Report would jeopardize the cash position of the Railway Company and its subsidiaries. Said Railway Companies have no available collateral, credit or borrowing capacity; and payment of $3,000,000 claimed taxes would distort the accounts so as to prevent payment of interest under the Plan, interfere with the effective execution of the Plan, reduce the market value of the securities and impair the refunding of indebtedness at the conclusion of the Plan.

37. If the additional income taxes and excess profits taxes first brought forward by said Revenue Agent's Report more than three years after the entry of Decree of this Court establishing the Plan of Adjustment are assessed and enforced, the property and funds of said Railway Company will be thereby diverted from the execution of said Plan of Adjustment, and said Railway Company by reason thereof will not be able to pay the fixed or contingent interest

on its bonded indebtedness as directed by said Plan of Adjustment, or to make the capital expenditures authorized thereby, or to reduce its said indebtedness as provided for by said Plan; and its fixed charges will not be reduced, nor its credit improved, nor its bonds or stocks increased in value in accordance with the purposes of said Plan; and it will not be able to refinance its obligations upon the expiration of said Plan; and the assessment and enforcement of said proposed taxes will be inconsistent with said Plan of Adjustment, will interfere with the effective execution of the same; will be inconsistent with and contrary to the purpose and provisions of the McLaughlin Act; will be prejudicial and injurious to said Petitioner and its property; and will deprive the parties interested in said Plan of Adjustment of their rights thereunder.

38. If such additional income taxes and excess profits taxes so proposed, long after the entry of Decree herein, by said Revenue Agent's Report are assessed and enforced, said Plan of Adjustment will thereby be rendered ineffectual and futile; and the stockholders of said Railway Company will have sacrificed and lost the large dividends which, but for said Plan, they would have received from the large wartime earnings of said Railway Company and its affiliated and subsidiary companies, without gaining the benefits or advantages which said Plan was established to afford.

39. The assessment, enforcement and collection of the taxes proposed by said Revenue Agent's Report would be unjust and inequitable.

40. The Colorado and Southern Railway Company failed, by more than $1,900,-000, to earn its interest and other fixed charges in the years 1938 to 1941, inclusive. Interest on the bonds of the Railway Company, amounting to approximately $2,000,-000 for each such year, was paid by depleting the cash reserves, at times by borrowing from a subsidiary, by withholding the payment of current bills, and by taking advantage of a six-months' grace period. Bond interest due May 1, 1942, remained overdue when the Plan was promulgated, and the Railway Company was faced with maturity of more than $36,000,000 of bonds and notes, and other obligations of its own and its system companies, within the next five years. The admittedly desperate character of the financial condition of the Railway Company was somewhat offset by the rising war earnings in the year 1942 which were relied upon by those supporting the Plan, as well as by this Court. In the opinion of March 9, 1943, herein, this Court accepted the testimony of witnesses that the abnormally high earnings of the Railway Company resulting from the war, if properly conserved, would make the Plan of Adjustment work out for the benefit of all concerned. The Court and those supporting the Plan recognized that it appeared to be feasible by a very narrow margin. A vital consideration in determining the feasibility of the Plan was the amount of war earnings which the Railway Company could be expected to retain for debt reduction. This depended upon the amount of its invested capital, the base for calculation of excess profits credits and carry-overs under the Revenue laws. If the Secretary of the Treasury had appeared before this Court pursuant to statutory notice and had then advised this Court that the Treasury Department intended to attack the invested capital base of the Railway Companies by reducing the value of the stock of the Railway Company, and their accumulated earnings and profits, in the manner proposed in the Revenue Agent's Report, and established the right to make such reductions, there could have been no Plan of Adjustment under the McLaughlin Act which this Court could have approved or which would have been assented to by the bondholders and stockholders.

41. Subsequent to the Decree establishing said Plan of Adjustment and prior to the service of said Revenue Agent's Report, large numbers of persons, relying upon the continued operation of said Plan, under said Decree, and relying upon the integrity of the accounts and balance sheets attached to the Plan and upon which it was based, and relying on the tax credits and carry-overs claimed by said Railway Company, believed and were justified in believing that said Railway Company would not be subjected to revisions of its tax returns or to

claims for income and excess profits taxes resulting from large reductions in its invested capital base or in its deductions for depreciation on equipment or retirement of roadway property, such as are set out in said Revenue Agent's Report; that by reason of such justifiable reliance and belief (a) many persons who were owners of the bonds and stocks of said Railway Company retained ownership thereof during a period when they could have sold such securities on the market at substantial profits, and (b) many persons purchased bonds and stocks of said Railway Company which they would not have purchased if the United States had disclosed said tax claims to this Court at the hearing on the Plan, or within the time provided in Rule 60. If the United States could change the tax returns of the Railway Company for the years 1940 to 1943, inclusive, by writing down the equity invested capital, the deductions, credits and carry-overs as proposed in the Revenue Agent's Report, the persons above mentioned and all other stockholders and bondholders of the Railway Company would be subjected to large losses due directly to the failure of the United States to present such claims when duly notified that the Plan was under consideration by this Court.

42. Certain owners of bonds and stock of The Colorado and Southern Railway Company, to-wit: James L. Foley, Teresa Dustman, Martin E. Goetzinger, George H. Jacob, John A. Dawson, and Franklin Lyons appeared before this Court at the hearing on the Supplemental Petition, were represented by counsel, Mr. Maxwell V. Beghtol, of Lincoln, Nebraska, participated in the proceedings, and by their conduct adopted the pleadings of said Railway Company. They have become parties to this proceeding and the Findings of Fact, Conclusions of Law, and Judgment entered herein shall apply with full force and effect to each and all of said parties.

43. The Court in its Decree of March 8, 1943 in this proceeding reserved "full right and jurisdiction to make, from time to time, such further orders as may be necessary to protect and enforce the rights and duties of the parties under said Plan and the orders of the Special Court herein." The United States has wholly failed to in-

voke the aid of the Court with respect to any claims for taxes, and stood by and permitted the Plan to be approved, and confirmed and carried into effect on the basis that no taxes were owing by the Railway Company.

44. The Court finds generally in favor of The Colorado and Southern Railway Company and against the United States for the years 1940, 1941, 1942 and 1943. No findings nor judgment are made concerning 1944, 1945 or 1946, as to which years no report of any revenue agent has been presented, but these findings and the judgment supported thereby are without prejudice to the application of any party for such relief concerning such years as they may be advised to make application for during the life of the Plan.

And on the foregoing Findings of Fact the Court states its conclusions of law, as follows:

## Conclusions of Law.

1. Said Supplemental Petition, filed October 2, 1948, is ancillary to said original proceeding, entitled "In the Matter of The Colorado and Southern Railway Company, Petitioner," No. 11842, Bankruptcy Docket, and brought in said United States District Court to procure the approval, confirmation and establishment of said Plan of Adjustment; and said Supplemental Petition was filed and is prosecuted to secure and preserve the fruits and advantages of the Decree rendered on March 8, 1943 in said original proceeding; and to protect said Petitioner and its property against action which will be inconsistent with the Plan of Adjustment established thereby, interfere with its effective execution, and be inconsistent with and contrary to the purposes and provisions of said McLaughlin Act; and to protect and enforce the rights of the parties under said Plan of Adjustment and the orders of the Court thereon.

2. In said original proceeding process was duly issued to and served upon the United States and the Secretary of the Treasury of the United States, in the manner provided in said McLaughlin Act.

3. The Court is sitting as a Court of Equity, and these proceedings are proceedings in bankruptcy.

4. This Court has jurisdiction of the subject matter of said Supplemental Petition and of the parties thereto; and has exclusive jurisdition of said Petitioner, The Colorado and Southern Railway Company, and of its property wherever located to the extent which may be necessary to protect said Petitioner and its said property against any action which may be inconsistent with said Plan of Adjustment, or which may interfere with the effective execution of said Plan, or be otherwise inconsistent with or contrary to the purposes and provisions of said McLaughlin Act; and has jurisdiction to the extent necessary to protect and enforce the rights of the parties under said Plan of Adjustment and the orders of the Court thereon; and also has jurisdiction to secure and preserve the fruits and advantages of said Decree, rendered in said original proceeding on March 8, 1943.

5. At all times after December 31, 1942 the United States was a creditor of said Railway Company for whatever income taxes and excess profits taxes, if any, would become due from or be payable by said Railway Company and its affiliated and subsidiary Companies, for the year 1942; and the claim, if any, of the United States for such 1942 taxes was then a provable claim; and it was the duty of the United States to have filed and presented to the Court in said proceeding whatever claim it had against said Railway Company, or against its affiliated and subsidiary Companies, for any taxes for the year 1942, and to have had the amount and legality thereof determined by the Court before the Decree was made and entered in said proceeding with respect to a Plan of Adjustment, or within six months thereafter under said Rule 60 of the nonpresentation of such claim before entry of said Decree was the result of mistake, inadvertence, surprise or excusable neglect; so that any such 1942 taxes might have been provided for in a modification of the proposed Plan of Adjustment if found practicable, feasible and financially advisable.

6. Said Decree of March 8, 1943, and the Findings of Fact and Conclusions of Law on which the same was based, constitute an adjudication, binding on the United States, that no taxes were due or payable to the United States from said Railway Company or its affiliated or subsidiary companies, for the year 1942; and the United States is estopped, barred and precluded from claiming, assessing, asserting, enforcing or collecting any income taxes or excess profits taxes from said Railway Company, or its affiliated and subsidiary Companies, for the year 1942.

7. It was the duty of the United States to inform the interested parties of, and to present to the Court in an appropriate manner in said original proceeding, any and all changes which the United States intended or proposed to make, or to contend for or insist upon, in or with respect to any of said tax returns for the years 1940, 1941 and 1942 or in or with respect to any of the accounts, bases, valuations, facts, data, statements, principles, practices, methods, net operating loss deductions, excess profits credits, or unused excess profits credits subject to carry-over, which were contained, reported, returned, stated, claimed, used or applied in any of said tax returns for the years 1940, 1941 and 1942, which would increase the taxes thereafter to be paid to the United States by said Railway Company or its affiliated or subsidiary companies; and to have the propriety and legality of any such changes determined by the Court before the making and entry of the Decree in said proceeding with respect to a Plan of Adjustment, or within the time thereafter allowed by said Rule 60; so that any such changes so far as found justified and lawful, might have been considered and provided for in a modification of the proposed Plan of Adjustment, if such modification could be found practicable, feasible and financially advisable.

8. Said Decree, and the Findings of Fact and Conclusions of Law upon which it was based, constitute an adjudication, binding on the United States, that in making the consolidated income tax and excess profits tax returns for itself and affiliated and subsidiary companies, and in the computation, determination, assessment, collection and enforcement of the income taxes and excess profits taxes, if any, of said Railway Company and its affiliated and

subsidiary companies, said Railway Company in the execution and administration of said Plan of Adjustment, is entitled:

"(a) to have the sum of $48,001,764.00 taken, used and applied as the amount of property paid in for stock, in determining equity invested capital for each of the years 1940, 1941, 1942 and 1943;

"(b) to have the sum of $20,369,868.72 taken, used and applied as the amount of accumulated earnings and profits in determining equity invested capital for the year 1940;

"(c) to have the sum of $18,707,695.45 taken, used and applied as the amount of accumulated earnings and profits in determining equity invested capital for the year 1941;

"(d) to have the sum of $17,954,799.25 taken, used and applied as the amount of accumulated earnings and profits in determining equity invested capital for the year 1942;

"(e) to have the sum of $19,208,573.94 taken, used and applied as the amount of accumulated earnings and profits in determining equity invested capital for the year 1943; that being the sum shown by the books of said companies on December 31, 1942;

"(f) to have the same accounts, bases, principles, practices, rates, valuations, methods and rules used and applied in calculating and computing deductions from gross income, on account of depreciation of locomotives, cars and rolling stock equipment, and on account of retirements of road property and structures, in said consolidated tax returns, and in the calculation and computation of net operating losses, excess profits credits, carry-over credits and deductions, and in the computation of the tax liability of itself and its affiliated companies for the years 1940, 1941 and 1942, as were returned, reported, stated and used and applied by said Railway Company in said consolidated tax returns filed for the years 1940, 1941 and 1942;

"(g) to have the sum of $2,033,824.48 carried over as a net operating loss deduction from the year 1940;

"(h) to have the sum of $6,833,723.67 carried over as unused excess profits credit from the year 1940;

"(i) to have the sum of $1,605,727.25 carried over as a net operating loss deduction from the year 1941;

"(j) to have the sum of $6,737,828.82 carried over as unused excess profits credit from the year 1941;

"(k) to have the sum of $496,064.25 carried over as a net operating loss deduction from the year 1942;

"(l) to have the sum of $5,700,902.08 as excess profits credit for the year 1943; and

"(m) to have the sum of $2,884,432.92 carried over as unused excess profits credit from the year 1942."

And the United States is estopped, barred and precluded from using, applying or giving effect to any other or different accounts, bases, amounts, valuations sums, principles, practices, rates, methods, net operating loss deductions, excess profits credits, or carry-overs, respectively, than those stated in the foregoing clauses (a) to (m), inclusive, in this Conclusion of Law No. 8, in the calculation and computation of the carry-over net operating loss deductions and carry-over excess profits credits, and in the calculation and computation of the taxable income of said Railway Company and its affiliated and subsidiary companies, in, for and from said years, respectively.

9. The assessment, enforcement and collection of the additional taxes for 1942 and 1943, proposed in said Revenue Agent's Report would be inconsistent with said Plan of Adjustment, would interfere with the effective execution of said Plan, would be inconsistent with and contrary to the purposes and provisions of said McLaughlin Act, would be prejudicial and injurious to said Petitioner, The Colorado and Southern Railway Company and would unlawfully take its property, and would deprive the parties interested in said Plan of Adjustment of their rights thereunder.

10. The changes in the consolidated income tax and excess profits tax returns of the Railway Company and its subsidiary and affiliated companies, for the years 1940, 1941, 1942 and 1943, as proposed in said Revenue Agent's Report, would be unjust, inequitable and unlawful.

11. The assessment, enforcement and collection of the additional taxes for the

years 1942 and 1943 proposed in said Revenue Agent's Report would be unjust, inequitable and unlawful.

12. The judgment hereinafter directed to be entered in this proceeding is necessary to protect and enforce the rights of the parties to said original proceeding, and to this supplemental and ancillary proceeding, under said Plan of Adjustment and the orders of the Court thereon; and is necessary to protect said The Colorado and Southern Railway Company and its property against action which is and will be inconsistent with said Plan of Adjustment, and which will interfere with the effective execution of said Plan, and which will be inconsistent with and contrary to the purposes and provisions of said McLaughlin Act; and said Petitioner is entitled thereto.

13. The Court should retain and reserve jurisdiction in said proceeding, No. 11842, to make from time to time such further orders and judgments as may be necessary to protect said Petitioner and its property against any action which may be inconsistent with said Plan of Adjustment, or which may interfere with the effective execution of said Plan, or which may be inconsistent with or contrary to the purposes and provisions of said McLaughlin Act, and as may be necessary to protect and enforce the rights of the parties under said Plan of Adjustment and the orders of the Court thereon; and to secure and preserve the fruits and advantages of said Decree of March 8, 1943 and of the judgment to be entered herein on said Supplemental Petition.

And the Court, on its foregoing Findings of Fact and Conclusions of Law, hereby renders and directs the entry of a judgment, as follows:

## Judgment.

It Is Considered, Ordered, Adjudged And Decreed by the Court, in said proceeding, entitled "In the Matter of The Colorado and Southern Railway Company, Petitioner," No. 11842, Bankruptcy Docket, that:

1. No income taxes or excess profits taxes for the year 1942 are owing, due or payable to the United States from The Colorado and Southern Railway Company, or from any of its affiliated or subsidiary companies included in their consolidated income tax and excess profits tax returns for the year 1942;

2. In determining the consolidated taxable income, if any, of The Colorado and Southern Railway Company and its affiliated and subsidiary companies, for income taxes and excess profits taxes for the year 1943, there shall be used:

"(a) the sum of $48,001,764.00 as that part of the equity invested capital of said Railway Companies consisting of property paid in for stock;

"(b) the sum of $19,208,573.94 as that part of equity invested capital of said Railway Companies consisting of accumulated earnings and profits, shown by the books and accounts of said Railway Companies December 31, 1942;

"(c) the sum of $496,064.25 net operating loss deduction carried over from the year 1942;

"(d) the sum of $5,700,902.08 excess profits credit for the year 1943; and

"(e) the sum of $9,622,261.74 unused excess profits credits carried over from the years 1941 and 1942."

3. This judgment is made and entered without prejudice to the rights of any party with respect to any taxes for the years 1944, 1945 or 1946.

4. The Court hereby retains jurisdiction to the extent necessary to protect and enforce the rights of the parties under said Plan of Adjustment and the orders of the Court thereon, and jurisdiction of said The Colorado and Southern Railway Company and of its property wherever located to the extent necessary to protect said Railway Company and said property against any action which might be inconsistent with said Plan, or which might interfere with the effective execution thereof, or which might be inconsistent with or contrary to the purposes and provisions of said McLaughlin Act; and jurisdiction is hereby retained to secure and preserve the fruits and advantages of said Decree of March 8, 1943, and of this judgment.

PHILLIPS, Circuit Judge, and KENNEDY, District Judge, concur.

SYMES, District Judge (concurring specially).

I agree with my colleagues in the result reached in this case, but cannot concur in certain statements of legal principles contained in the findings filed.

My first objection is that the findings are altogether too long and voluminous and, as Judge Sanborn states in Brown Paper Mill Co. v. Irvin, 8 Cir., 134 F.2d 337, at page 338:

"Findings of fact should be 'a clear and concise statement of the ultimate facts, and not a statement, report, or recapitulation of evidence from which such facts may be found or inferred.'"

Further, they should be concisely stated, non-argumentative in form, free from conclusions of law, and from the redundancy so frequently found in pleadings.

Next, I cannot concur in certain statements of legal principle contained in conclusions of law 5 and 6.

I do not believe that "at all times after December 31, 1942, the United States was a creditor of said Railway Company for whatever income taxes and excess profits taxes, if any, would become due from or be payable by said Railway Company * * * for the year 1942"; or that "the claim, if any, of 'the United States for such 1942 taxes was then [i. e., on December 31, 1942] a provable claim"; or that "said decree of March 8, 1943, and the Findings of Fact and Conclusions of Law on which the same was based, constitute an adjudication, binding on the United States, that no taxes were due or payable to the United States from said Railway Company * * * for the year 1942."

My disagreement is solely a difference as to the *date* upon which the United States became foreclosed from filing a claim for the 1942 taxes. I do not believe that that date was December 31, 1942, or March 8, 1943, or any other date prior to March 15, 1943, when the petitioner admittedly filed its 1942 income tax and excess profits tax returns.

Section 738 of the McLaughlin Act provided that the order of the special court approving the petition shall have the effect of an adjudication of bankruptcy for the purposes of § 274 of the Internal Revenue Code. The latter section in turn sets forth that upon the adjudication of bankruptcy of any taxpayer any deficiency determined by the Commissioner shall be "immediately assessed."

A deficiency is defined in § 271 of the Act of May 28, 1938 (Revenue Act of 1938), and in the Internal Revenue Code of 1939, 53 Stat. 82, 26 U.S.C.A. § 271, which was in effect at the time the decree of March 8, 1943, was entered, as being "the amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer *upon his return* * * *" [Emphasis supplied]

The language of 26 U.S.C.A. § 274, supra, presupposes that there must be a *deficiency* before an assessment can be made; and § 271, supra, requires that there be a *return* before there can be a deficiency. Therefore it follows inescapably that, in this case, the Commissioner's duty to file an assessment of deficiency arose "immediately" after March 15, 1943, the date upon which the petitioner filed its return, and not "immediately" after any prior date.

While I recognize that the McLaughlin Act was remedial legislation and should be liberally construed, I do not believe that it was intended to rewrite the internal revenue laws and radically change the Commissioner's duty regarding the collection of the public revenue.

Admittedly, the Act sought to expedite the assessment of tax deficiencies. I do not believe it was intended to give the Commissioner inquisitorial powers over a prospective taxpayer's books, in advance of the filing of the return. The processing of the tax, and the amount thereof, does not begin until the taxpayer files his return on March 15th. Before that date it is impossible for either party to determine the exact amount due from the books, because deductions, and other items of credit, are not then accurately known, and any figures arrived at before March 15th would be inaccurate.

Finding of Fact No. 13 seems to hold that the Commissioner had both the power and the duty to exercise such inquisitorial functions vis-a-vis the taxpayer's books; for it specifically sets forth that all the "data," etc., "necessary to be known for the com-

putation" of the 1942 taxes "were of record and ascertainable" in the office of the petitioner's General Auditor, "and were there subject to inspection and examination by the United States at all times after January 25, 1943."

Certainly the McLaughlin Act contained no provision specifically vesting the Commissioner of Internal Revenue or his agents with the power or the duty of thumbing over a prospective taxpayer's records for any given year *before* that taxpayer had been given the opportunity of filing a return. I am not disposed to read into that Act—remedial though it may be—any such drastic departure from the genius of the internal revenue laws.